**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                     :
JOSEPH T. AUSTIN,                    :
                                     :   Civil Action No. 07-4428 (MLC)
                Petitioner,          :
                                     :
          v.                         :        O P I N I O N
                                     :
MICHELLE R. RICCI, et al.,           :
                                     :
                Respondents.         :
_____       :
```

**APPEARANCES:**

Joseph T. Austin, <u>Pro Se</u>
#315257/ 772532B
New Jersey State Prison, Trenton, N.J.

Roberta Dibiase, Office of the Ocean County Prosecutor
Toms River, N.J., Attorney for Respondents

**COOPER, District Judge**

Petitioner, Joseph T. Austin, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Michelle R. Ricci and the Attorney General of New Jersey, Anne Milgram.  The petition will be denied.

**BACKGROUND**

On September 10, 1999, in the Superior Court of New Jersey, Law Division, Ocean County, Petitioner pled guilty to shooting his twenty-year old victim in the face with a shotgun, reloading, and again shooting her in the face with the explicit intention of killing her (Respondents' Exhibits ("R") 2 and 3).  Evidence

against Petitioner included Petitioner's own confession to the crime, as well as physical evidence, including boot prints matching Petitioner's boots, found at the scene of the crime (R1, R7).  On October 21, 1999, Petitioner was sentenced to a seventy-year term of imprisonment (R4, 5).  Pursuant to New Jersey's No Early Release Act ("NERA"), N.J.S.A. § 2C:43-7.2, Petitioner was notified that he must serve 85% of that term, and thus would not be eligible for parole for more than 59 years (R4, 5).

Petitioner appealed the sentence, arguing that NERA did not apply to murder, and that the sentence was unduly punitive and manifestly excessive (R6).  On October 5, 2001, the New Jersey Appellate Division ("Appellate Division") agreed with Petitioner's argument concerning NERA and vacated the 85% minimum term, leaving in place the 70 year sentence, with a minimum of 35 years to serve before parole eligibility (R8).

Petitioner moved for post-conviction relief ("PCR"), alleging that his defense and appellate counsel rendered ineffective assistance, in violation of the Sixth Amendment to the United States Constitution (R12).  On July 8, 2005, a hearing on the PCR motion was held (R15), and on July 27, 2005, the PCR motion was denied (R16).  Petitioner appealed the denial to the Appellate Division, and on April 12, 2007, the Appellate Division affirmed (R19).  The New Jersey Supreme Court denied Petitioner's petition for certification on June 21, 2007 (R20).

Petitioner filed this habeas petition on September 12, 2007. On October 18, 2007, Petitioner was advised of his rights pursuant to <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000).  An order to answer was issued and Respondents filed an answer to the petition and the state court record on February 15, 2008.[1]

Petitioner asserts that trial counsel was ineffective, under the Sixth Amendment (Petition, ¶ 12).  His claims have been exhausted in the state courts.

## DISCUSSION

**A.   Standards Governing Petitioner's Claims**

28 U.S.C. § 2254 provides, in pertinent part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> As to any claim adjudicated on the merits in state court

proceedings, the writ shall not issue unless such adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[1]  On September 17, 2008, this Court denied Petitioner's motion to appoint counsel, and granted Petitioner 60 days to file a Reply/Traverse to Respondents' Answer.  Petitioner has not filed any Reply/Traverse.

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," although the Supreme Court expressly declined to decide the latter.  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable.  See id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of lower federal courts.  See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

4

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

A pro se pleading also is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Att'y Gen., 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969).

**B.   Claims of Ineffective Assistance of Counsel**

Petitioner asserts various claims of ineffective assistance of trial counsel, including counsel failed to: challenge the search and seizure of Petitioner's boots and search of Petitioner's vehicle; challenge the voluntariness of Petitioner's confession; challenge the violation of Petitioner's Sixth Amendment right to counsel; challenge the violation of Petitioner's Fifth Amendment right against compelled self-incrimination; raise a diminished capacity defense as a mitigating factor; challenge Petitioner's capacity to enter a guilty plea

voluntarily, knowingly, and intelligently; and challenge the legality of the base custodial term of 70 years (Petition, ¶ 12).

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  A petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  <u>See</u> <u>id.</u> at 688-89; <u>Jacobs v. Horn</u>, 395 F.3d 92, 102 (3d Cir. 2005); <u>Keller v. Larkins</u>, 251 F.3d 408, 418 (3d Cir. 2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  <u>Id.</u>  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of

6

> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see Virgin Islands v.

Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

If able to demonstrate deficient performance by counsel, a

petitioner must also show that counsel's substandard performance

actually prejudiced his defense.  See Strickland, 466 U.S. at

687.  Prejudice is shown if "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

Id. at 695-96.  Thus, a petitioner must establish both deficient

performance and resulting prejudice in order to state an

ineffective assistance of counsel claim.  Id. at 697; see Jacobs,

395 F.3d at 102; Keller, 251 F.3d at 418.

The Strickland standards also apply to guilty pleas alleged

to be the result of ineffective assistance of counsel.  See Hill

v. Lockhart, 474 U.S. 52 (1985); Dooley v. Petsock, 816 F.2d 885,

889 (3d Cir. 1987).  To prevail on an ineffective assistance

claim in a guilty plea context, a petitioner must show: (1)

counsel's performance relating to the plea was deficient; and (2)

the deficient performance prejudiced the case, because there was

a reasonable probability that but for counsel's errors, the
petitioner would not have pled guilty, and would have gone to
trial.  See Strickland, 466 U.S. at 687-88; Hill, 474 U.S. at 59.

Petitioner raised his ineffective assistance of trial
counsel arguments during his PCR motion.  The PCR court, citing
Strickland, addressed every argument raised by Petitioner,
finding, in relevant part:

> With respect to the first argument, the failure to file
> a motion to suppress with respect to the boots,
> Defendant argues that counsel failed to challenge the
> search of the boots and truck.
>
> * * *
>
> Here the State contends it's indicated the police
> noticed boot prints at the crime scene.  When the
> defendant was discovered wearing boots in the area of
> the crime scene, where he was driving at the time, he
> became a suspect and was taken in for questioning.
> Then, after waiving his Miranda rights, he provided a
> detailed confession, on the basis of which Defendant
> was arrested and charged with murder.
>
> According to the State, once the defendant was arrested,
> his clothing and belongings would have been seized
> incident to his arrest.  Since the boots had previously
> been exposed to police view under unobjectionable
> circumstances, no expectation of privacy would have
> been breached by an officer's taking a second look at
> the boots after the defendant's arrest . . . .
>
> In this regard the Court is not satisfied that
> counsel's performance was ineffective, as the evidence
> would have been inevitably discovered; and there is no
> showing, in this Court's view, that the results of the
> proceeding would have been different.
>
> With respect to the issue as to whether or not counsel
> failed to raise or challenge the confession because of
> defendant's mental deficiency, the defendant's
> custodial statement is admissible if it results from a
> voluntary, knowing, intelligent waiver of his
> constitutional right to remain silent.

8

And to determine whether the statement was voluntary, the Court must look to the totality of the circumstances, including both the characteristics of the defendant, the nature of the interrogations.  State has the burden of proving beyond a reasonable doubt the defendant's confession was voluntary and that his will was not overborne.

In this case, the record supports the view that the defendant was read his Miranda rights and indicated that he understood those rights and wished to give a statement. . . . [the PCR court continued to examine circumstances surrounding the statement] . . . .

The Court also, in consideration of that issue, reviewed the transcript at the time of sentence where his attorney at the time indicated, and the record should reflect, that Mr. Austin had been examined by two psychiatrists, Dr. Berkowitz and Dr. Eshkenazi, during the term of his prior counsel's representation.

Defense counsel stated at the time of sentence: "Judge, since that time, I have contacted Dr. Berkowitz, who was retained by our office for the purposes of reviewing the competency of Mr. Austin as well as exploring any potential defenses.

"I specifically requested that he provide me with information with regard to medications that he was being provided, and whether that would affect his ability to act knowingly or voluntarily with regard to any plea or any circumstances in court.

"He did respond to me, and I will indicate to the Court that we are satisfied, based upon what we were told, that the plea was entered knowingly and voluntarily."

So the Court has considered that in terms of assessing the performance of counsel as well, and does not find that counsel's failure to challenged the circumstances attendant to the giving of the statement were ineffective or deficient.

\* \* \*

. . . [With regard to Petitioner's argument that he was denied his right to counsel prior to identifying the crime scene] the defendant may well have succeeded on a motion challenging a Sixth Amendment violation.

Notwithstanding that fact, though, the Court does not find that would have affected the outcome in this case, given the detailed statement and the inculpatory

statements given by Defendant earlier, when the
interview took place following the Miranda warnings.

* * *

With respect to the failure of counsel to raise a
diminished capacity defense, he asserts his attorney
was ineffective by failing to raise a diminished
capacity defense as a mitigating factor.

And again, on the date of sentencing, the Court has
just read into the record the representation by defense
counsel in terms of the evaluations by Dr. Berkowitz,
which again were, as quoting the attorney, for the
purposes of reviewing the competency of Mr. Austin as
well as any potential defense.

* * *

Although defense counsel did not submit the reports of
Dr. Berkowitz into evidence, the inference is that the
reports did not present a defense, and presumably [were]
reviewed by counsel with Mr. Austin in that regard.

* * *

Defense argues that counsel was ineffective for failing
to challenge the capacity to enter a plea freely and
voluntarily and intelligently. [The PCR court continued
to examine the circumstances surrounding the plea].

* * *

[The] Court finds the record supports the view that the
plea was entered knowingly, voluntarily and
intelligently, and defense counsel's performance in
that regard is not viewed as deficient or ineffective.

* * *

Defendant asserts that he accepted the plea after the
prosecutor threatened to take his life.  In response
thereto, the assistant prosecutor handling the matter,
William Cunningham, certified, quote, at no time was he
in the jury room having any conversation with the
defendant, either alone with him or in the presence of
his attorney.

* * *

This raises an issue as to whether or not that assertion
by defense counsel would warrant an evidential hearing
in terms of the voluntariness of the plea.

It is the Court's view that the certification of Mr.
Austin where he asserts he was threatened by the
assistant prosecutor in and of itself is not sufficient
to warrant an evidential hearing, mindful that these
assertions must be put in the light most favorable to
the defendant, for the following reasons. [The PCR
court continued to examine this claim.]

* * *

So, the Court has considered that certification and
does not find that a <u>prima facie</u> showing has been
demonstrated; and therefore, the relief in that regard
will be denied.

* * *

Finally, the defendant asserts that counsel was
ineffective for failing to challenge the legality of
the sentence.

* * *

. . . the Court cannot find that defense or appellate
counsel in that regard was deficient.

(R15 at pp. 12-25.)

The Appellate Division affirmed the PCR court's findings,

also citing <u>Strickland</u>, and held:

Defendant confines his attention on appeal to the
alleged threat, which he concedes was interpreted
solely as the prosecutor's intention to seek the death
penalty.  Defendant asserts that his attorney should not
have left him in the room with the assistant prosecutor
and subjected him to coercion.  Disclosure of the full
range of penal consequences is required in order to
assure that any agreement is a knowing and voluntary
waiver of the full panoply of rights conferred on a
defendant.  The full measure of the penal consequences
of a criminal act may be awesome, even frightening, to
an individual. It cannot, however be considered
coercive.  Reality may be unpleasant or frightening,
but it does not render an otherwise knowledgeable plea
involuntary.  Moreover, unlike in <u>State v. McQuaid</u>, 147
N .J. 464, 489 (1997), there is no suggestion in this
case that defendant was not death-penalty eligible.  In
other words, defendant did not enter his guilty plea
based on a misapprehension of law or fact.

> We, therefore, conclude that defendant failed to establish a prima facie case of ineffective assistance of counsel.  The judge was not required to conduct an evidentiary hearing and appropriately denied the petition.

(R19 at p. 2)(internal citations omitted).

A review of the record here shows that counsel was competent and did not perform deficiently.  As set forth in the record, especially the oral decision of the PCR judge (R15), Petitioner's plea was knowing, voluntary, and intelligent.  The evidence against Petitioner — including his own statement admitting his guilt and the boot prints found around the victim — demonstrates that counsel was not deficient and was acting strategically in representing Petitioner in his plea and sentencing.  With the confession and the corroborating physical evidence found at the scene of the crime, it is unlikely that, even if counsel's performance was deficient, Petitioner would not have pled guilty.

As the record reveals that the state courts relied on the Strickland standard in evaluating Petitioner's ineffective counsel claims, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the trial court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  Petitioner's claims will be denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Petitioner here has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

**CONCLUSION**

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.  The Court will issue an appropriate order and judgment.


                              s/ Mary L. Cooper
                         **MARY L. COOPER**
                         United States District Judge

Dated:     February 26, 2009

14